GRIFFIN, Chief Judge.
Charles E. Mahoney, Jr. [“Mahoney”] appeals a partial final summary judgment of foreclosure.
Uladislao Diaz and Kyon Diaz [“the Diazes”] sold Mahoney a residence located at 316 Lanternback Island Drive, in Satellite Beach, Florida. The purchase price was $490,000. Mahoney obtained bank financing in the amount of $340,000 as part of the transaction.
The dispute in this ease concerns Maho-ney’s attempt to finance the remainder of the purchase (approximately $150,000, plus closing costs). The Diazes claim that they agreed to finance the remainder of the mortgage through a second mortgage on the property in the amount of $160,000. Maho-ney’s story, however, has gone through several incarnations. Most recently, he asserts that, although the parties originally contemplated a second mortgage on the Lantern-back property, the Diazes ultimately agreed to buy a piece of property he owned on Highway ALA in Indialantic, Florida for $210,000, the proceeds of which ($160,000) were used to fund the purchase of the Lan-ternback property. Mahoney asserts that this sale took place, and that the Diazes fraudulently or mistakenly recorded a mortgage on the Lanternback property. He further claims that the Diazes cured this problem by later executing a “partial release” of mortgage, which released the Diazes’ mortgage on the Lanternback property in its entirety.[1]
The Diazes filed a three-count complaint against Mahoney alleging the existence of a second mortgage executed by Mahoney in the amount of $160,000. They further alleged that Mahoney had not made any payments on the mortgage and sought foreclosure. Count II sought cancellation of the “partial release of mortgage” allegedly executed by the Diazes. The count alleged that the release had been forged by Mahoney. Count III was a claim for fraud related to the release.
Mahoney answered the complaint, asserting a number of affirmative defenses. His primary affirmative defenses were that the second mortgage on the Lanternback property had been fraudulently recorded by the Diazes, that the second mortgage had been released, and that he had been fraudulently induced to purchase the property by false representations that there were no liens on the property. While the action was pending, Mahoney apparently rented the house yet failed to make any payment on the first mortgage or the second mortgage.
The Diazes filed a motion for summary judgment. Attached to the motion was an affidavit executed by Mr. Diaz, in which he stated: (1) that he and his wife had sold the Lanternback property to Mahoney on May 24, 1996; (2) that he had gotten a mortgage in the amount of $160,000 from Mahoney as part of that transaction; (3) that the release was a forgery; (4) that the Lanternback property was free and clear of any hens and defects in title; (5) that the mortgage was signed contemporaneously with the sale and was intended to be recorded; and (6) that Mahoney had made no payments on the mortgage.
*974 Mahoney filed an affidavit in opposition to the Diazes’ motion. In his affidavit, Maho-ney stated, among other things, that he had agreed to purchase the Lanternback property from the Diazes on March 6, 1996 for $490,000; that on March 11, 1996, the Diazes entered into a contract with him to buy the AIA property for $210,000; that both transactions were closed on May 17, 1996; that during negotiations for the sale of the AIA property, he had considered simply granting a second mortgage to the Diazes on the property and had executed a second mortgage in blank, which was not notarized; that the Diazes had recorded the mortgage, at which time it reflected second mortgages on both the Lanternback and AIA properties; that the Diazes had executed a partial release of the mortgage on May 24, 1996, to release the mortgage on the Lanternback property; that Mahoney had applied for a second mortgage on the Lanternback property on July 1, 1996, for which he had later been approved, subject to a title search; and that the title search had revealed about five title defects in the property. The affidavit concluded that the second mortgage held by the Diazes was invalid and that they had failed to prove that the partial release was invalid. Mahoney submitted a number of documents in support of his claims.
In addition to his own affidavit, Mahoney submitted the affidavit of Joseph Hartwig, who stated that he had officially witnessed Diaz sign the release in question on May 24, 1996. He said that he later took the release to Tamela Jackson, the notary; explained to her that he had seen Diaz sign the release; and that Jackson had then notarized the release.
The trial court entered a final summary judgment of foreclosure against Mahoney on May 23, 1997. The judgment acknowledged that:
The Defendant CHARLES E. MAHO-NEY, JR. has filed Affidavits in opposition to the Plaintiffs Motion for Summary Judgment.
Nevertheless, the court found the mortgage was valid and entered summary judgment.
Mahoney filed a motion for rehearing and/or to set aside the order of sale. In the motion, Mahoney contended that the affidavit from Hartwig plainly supported his contention that the release was valid and created a question of fact as to the validity of the release. A second affidavit from Hartwig, reaffirming the statements made in the earlier affidavit, was attached to the motion.
The property was sold to the Diazes at a foreclosure sale on June 25, 1997. On July 15, 1997, the court denied the motion for rehearing.
Unfortunately, the appellees have elected not to appear in this appeal. Although we have confidence in the very experienced judge who entered summary judgment in this case, we cannot see how a summary judgment is sustainable in the face of Mr. Mahoney’s affidavits. The validity of the release of the mortgage sued upon appears to be in dispute and, accordingly, we reverse the summary final judgment and remand for further proceedings.
REVERSED and REMANDED.
ANTOON, J., concurs.
DAUKSCH, J., concurs in result only.

. The release left a purported mortgage held by the Diazes on the AIA property, which they supposedly owned when the release was executed, intact.